UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK MILLS,

    Plaintiff,                              07 CIV 0710 (MGC)

vs.                                      **COMPLAINT**

BEAR, STEARNS & CO., INC.,          ECF Case

    Defendant.
-------------------------------------------x

    By and through his counsel, plaintiff complains of defendant as follows:

**PARTIES**

    1. Plaintiff is an African-American male who resides in the County of New York, State of New York within this judicial district.

    2. Defendant is a corporation which does business in the State of New York and employs more than 20 persons. It may sue and be sued in this Court.

**JURISDICTION**

    3. In June 2005, plaintiff filed an EEOC complaint alleging that defendant discriminated against him on the basis of his race. [No. 160-2005-01570]

    4. The EEOC accepted jurisdiction of this Complaint and investigated the Complaint.

    5. After the EEOC found probable cause that defendant did discriminate

against plaintiff on the basis of race, it attempted to conciliate this matter with defendant.

6. Conciliation was unsuccessful and on October 17, 2006, the EEOC issued a right to sue letter to the plaintiff.

7. On or about January 5, 2007, plaintiff's counsel wrote defendant seeking an amicable resolution of this dispute.

8. The parties were unable to resolve this matter, but did agree to extend the date for filing this matter until January 31, 2007.

9. On or about March 6, 2000, after he had accepted employment with the defendant and terminated his prior employment, defendant presented plaintiff with a document and demanded that he sign the same.

10. Said document required the arbitration of disputes arising under the civil rights law, including Title VII and 42 U.S.C. sec. 1981.

11. Said arbitration agreement should be declared null and void as it is unconscionable, deprives the plaintiff of his right to trial by jury and was imposed upon plaintiff as a condition of employment after plaintiff and defendant had agreed to the terms and conditions of his employment and at a time when the defendant had undue leverage over plaintiff.

12. Said arbitration agreement was intended by defendant to subordinate

plaintiff and provide him with an inferior remedy to that available under the federal civil rights laws.

13. Said arbitration agreement consigns plaintiff to an inferior forum which is more likely to be controlled and or influenced by the defendant since plaintiff has one case and defendant has frequent recourse to the arbitral forum.

14. This district court has jurisdiction over this matter pursuant to Title VII of the Civil Rights Act, 42 U.S.C. sec. 2000e-5, 28 U.S.C. secs. 1331, 1343 (3) and 4 and 1367, which provides this court with ancillary jurisdiction over related state claims which arise out of the same nucleus of operative facts.

### STATEMENT OF FACTS

15. Plaintiff, who is African-American commenced working for defendant's Corporate Marketing Department on March 6, 2000.

16. At all times he was employed by defendant, plaintiff's work performance was exemplary and so regarded by his internal clients and co-workers.

17. Jim Irvine, who is Caucasian, worked in the same department as the plaintiff.

18. Between the time plaintiff commenced working until he resigned in September 2004, Irvine routinely made bigoted comments in plaintiff's presence,

concerning members of minority groups and minority workers.

19. Debra Douglas supervised plaintiff between April, when she joined Bear, Stearns & Co., Inc., and September 2004.

20. Douglas, who is also Caucasian, observed Irvine make bigoted comments and, in response, laughed or said nothing.

21. Both plaintiff and a minority co-worker, Edy Naguib, complained to Human Resources about the bigoted comments made by Irvine and Douglas' lack of response.

22. On one occasion, in plaintiff's presence, Douglas made comments about slavery and stated, "the firm is no longer in that business."

23. Plaintiff observed Douglas being, cold, aloof and distant to African-Americans and interact in an entirely different manner toward Caucasians.

24. Plaintiff observed Douglas take members of her management team to lunch and exclude the African-American woman who was director of advertising.

25. Plaintiff reported to HR that the department in which he worked had a culture of bigotry and provided them examples of comments made by Douglas, Irvine and by plaintiff's immediate manager, Terry Fernandez [a Polish woman married to a white-complected Cuban man].

26. In the summer 2004, plaintiff became ill with severe headaches and stomach problems as a consequence of the bigotry he observed and experienced while in defendant's employ.

27. After defendant terminated Fernandez, plaintiff spoke with Douglas and asked her to assign him to assume some of her duties.

28. Douglas listened to plaintiff and indicated that she would certainly keep his interest in mind.

29. In the summer 2004, a less experienced white woman, Lisa Grossman, who was a friend of Irvine's, was assigned to the Corporate Marketing Department.

30. Douglas assigned Grossman, who had little or no marketing experience, some of the responsibilities of plaintiff's former manager.

31. Grossman lacked plaintiff's education, experience and qualifications for a supervisory position in the Corporate Marketing Department.

32. Shortly after Fernandez was terminated, Irvine announced that Grossman had been asked to serve as project manager for one of plaintiff's projects.

33. By dint of the conduct of defendant's agents, plaintiff was deprived promotion, bonuses commensurate with his performance and those given to

similarly-situated Caucasians and subjected to a hostile work environment.

34. Based upon the aforecited treatment, plaintiff resigned from defendant and accepted an inferior position.

35. Defendant's conduct caused plaintiff pecuniary damages, including loss of salary, bonuses, stock options, pension benefits and the possibility of advancement.

36. Defendant's conduct caused plaintiff non-pecuniary damages including pain, suffering, humiliation, anxiety and humiliation as well as physical symptoms, including severe migraine headaches.

**CAUSES OF ACTION**

37. Plaintiff incorporates paras. 1-36 as if fully re-written herein.

38. By and through the conduct set forth above, defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 1981 and section 296 of the Executive Law of the State of New York.

WHEREFORE, plaintiff prays that this Honorable Court:

a) accept jurisdiction over this cause and declare the mandatory arbitration provision null and void;

b) empanel a jury to hear and decide the matter;

c) award to plaintiff and against the defendant compensatory and punitive

damages;

d) award attorneys fees to plaintiff and against defendant and

e) enter any other order it deems just and equitable.

                              Respectfully submitted,

                              S/Michael H. Sussman [3497]

Law Offices of Michael H. Sussman
PO Box 1005
Goshen, New York 10924
(845)-294-3991

Counsel for Plaintiff